Denio, C. J.
The supreme court was correct in holding that the widow was entitled to one-third of the gross amount of the sales of the real estate. A widow’s title to dower is not prejudiced by debts and incumbrances incurred by her husband. She ought not, therefore, to be compelled to contribute to the expenses, occasioned by the existence of such debts. Independently of the statute authorizing these sales, she would be entitled to one-third in value of her husband’s lands, to be set off to her by metes and bounds. A fair equivalent for such assignment of dower is the interest upon one-third of the value of such lands, to be ascertained by offering them at auction. This is what the statute intended to give her in lieu of dower in cases where the lands charged with a claim of dower are sold to pay the debts of the husband. Where she does not elect to receive a gross sum in lieu of dower, the surrogate is to “ set apart one-third part GÍ the purchase money ” of the lands sold, to be invested in permanent securities, &c. (2 R. S., 106, § 37.)
I do not perceive the propriety of including the interest which had accrued on one-third of the purchase money from the day of the sale to the time of the distribution, in the amount to be invested for the benefit of the widow. She was entitled to the interest absolutely; and the provision in the decree which directed it to be invested as a part of the principal, was more favorable to the creditors than an order requiring it to be paid to her directly, for, by making' it a part of the capital, they will be entitled to have it distributed among themselves at the death of the widow. (§46.) But the supreme court erred in disturbing this part of the decree. The creditors, who alone appealed, had no claim to this interest, and if the widow was satisfied with the disposition which was made of it, no one else had a right to complain.
The allowance to the administrators by the surrogate’s decree, for their own services, was grossly excessive. There was no evidence to show that there was a difficulty in finding out what lands the intestate was seized of, or in ascertaining *286 the amount of his debts, or that the business was in any respect complicated. The statute allows executors and administrators in such cases, over and above their expenses, “ a compensation not éxceeding two dollars a day, for the time necessarily occupied in such sale.” (Laws 1844, 447.) If it be conceded that this language would embrace the time necessarily spent in preparing for the sale, there is no evidence to show, and no reason to believe, that the time allowed by. the judgment of the supreme court would not be amply sufficient. The evidence of the administrator, who was examined as a witness, is quite unsatisfactory. He does not state what in particular he did, or what was to be done. He says, indeed, that he thinks he spent one hundred and forty days in preparing the petition and making the sales. The sales occupied but three days at the utmost, and the drawing of the petition is charged for by the attorneys, and allowed to the administrators as a disbursement. Doubtless some time would be consumed in looking tip the testator’s title papers, and in ascertaining the description of the land and the condition of the title; but no particulars as to this are given in the testimony. The administrator swears to one hundred and forty days, nearly five months in gross; and to justify the charge, he says he could not establish himself in any other business while this matter was going on. No'facts are shown to prove that such an exclusive devotion of the administrator’s time to this business was necessary. The statute contemplates only an allowance for time necessarily and actually occupied about the sale. It does mot warrant the idea, which seems to have been entertained by this administrator, that lie was upon a salary from the commencement to the conclusion of the business. We think the allowance of $60, made by the supreme court, was quite liberal.
In the bill of costs $132 are charged for drawing and engrossing eighteen deeds of the lands sold, and $45, in addition, as a disbursement for printingthem. The statute contemplates that the deeds are to be prepared by the administrar *287 tors, audit allows them $2 for each deed. (Laws of 1844, supra.) The supreme court accordingly reduced the allowance for the deeds to $36. This was correct. For the other services of the attorneys the court allowed only the sum of $50 under the head of a charge for drawing papers. The administrators are, by the statute, to be allowed “ their expenses in conducting such sale.” It requires a liberal interpretation of this language to enable it to cover professional services for attending to the application before the surrogate, and for drawing the petition and the necessary orders, and seeing to the service of the citations and the publication of the notices; and yet I can scarcely conceive of a case where the services of an intelligent and careful attorney would be more necessary, as any substantial error in the proceedings would generally defeat the title of the purchaser. The statute seems to suppose that these proceedings would be conducted wholly by the administrators and the surrogate, and that there would be no necessity for legal advice or assistance ; but I regard it as so essential that there should be the supervision of some qualified person, that I would hold that a reasonable allowance for professional advice and-assistance would be a necessary expense within the meaning of the act of the legislature.
The bill of costs presented by the administrators in this case was wholly inapplicable, and the amount charged and allowed was far beyond a reasonable compensation for the service. It is to be observed that there was no contest or litigation throughout the proceeding. It was for the most part business which might be performed by a clerkand although the papers appear, from the charges in the bill, to have been voluminous, it is probable they were made up, in the main, of descriptions of the land and copies of the orders If evidence had been given showing the character and extent of the services, it is possible and even probable that a greater allowance than the one made by the supreme court would have been appropriated. But in the absence of such proof, we have no data for pronouncing that allow *288 anee inadequate. We see clearly that the sum allowed by the surrogate was quite too large, and that judgment w*as therefore properly reversed by the supreme court. If the allowance substituted by that court was too limited in ¿mount, it is the fault of the present appellants, in failing to give precise evidence as to the character and value of the services, which deprives this court of the power of correcting it.
There is no weight in the objection that the creditors who appealed had received their dividends under the decree of the surrogate. (Clowes v. Dickenson, 8 Cow., 328, 331.) They were certainly entitled to the amount paid them, and there was no inconsistency on their part in receiving that amount, and then appealing for the purpose of obtaining a reduction of the allowance for expenses, which would give them a further dividend. There was no proof of any expenditure for horse hire, and that item was therefore properly disallowed.
The portion of the judgment of the supreme court which relates to the sum of $150.03 must be reversed; in other respects the judgment should be affirmed, but the litigation upon that subject was so unimportant that it ought not to influence the question of costs.
The judgment of the supreme court being affirmed in all its material points, the appellants should pay costs.
T. A. Johnson delivered an opinion in favor of the same result.
Judgment accordingly.